**SO ORDERED.**

**SIGNED this 12th day of October, 2006.**

_____
LARRY E. KELLY
UNITED STATES CHIEF BANKRUPTCY JUDGE
_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| **ALBERT DOYLE CLEVELAND AND** | § | **CASE NO. 05-63342-LEK** |
| **ELIZABETH JUNE YORK A/K/A** | § | |
| **ELIZABETH YORK-CLEVELAND AND** | § | |
| **ELIZABETH CLEVELAND,** | § | |
| Debtors. | § | Chapter 7 |
| | § | |
| **CARL MAULDIN AND** | § | |
| **MARILYN MAULDIN,** | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | **ADVERSARY NO. 06-6010** |
| | § | |
| **ALBERT DOYLE CLEVELAND AND** | § | |
| **ELIZABETH J. CLEVELAND,** | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

On October 4, 2006 the Court conducted a trial in the above styled adversary proceeding.

Plaintiffs Carl and Marilyn Maudlin seek to have the debt they allege the Defendants Albert

Doyle Cleveland and Elizabeth J. Cleveland, aka Elizabeth York, determined to be non-

1

dischargeable under 11 U.S.C. § 523. In other words, Plaintiffs seek a determination that the Defendants remain personally liable to repay this debt despite the fact that Defendants received a discharge in bankruptcy as to other debts. This is a core proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(b)(2)(I).

During trial, Plaintiffs admitted into evidence Exhibits 1-13, and Defendants admitted into evidence Exhibit A. Plaintiff Carl Maudlin and Defendant Albert Cleveland testified on direct and cross-examination. All parties presented argument for and against whether the debt owed to Plaintiffs should be held nondischargeable. Both sides appeared pro se and made their own presentations and argument. Both parties also filed proposed Pre-trial Orders, including the Defendants' including a "statement of agreed facts," all of which the Court has reviewed. After considering all of the evidence received at the trial, as well as the pleadings on file, the following represents the Court's findings of fact and conclusions of law made pursuant to Bankruptcy Rule 7052 and Federal Rule of Civil Procedure 52.

### Background

In this suit, Plaintiffs alleges that, in June 2002, they loaned money to Defendants in good faith and that an agreement was made by all parties which contained the provision that Plaintiffs could withdraw the funds upon demand.

In their Pretrial Order, and at trial, Plaintiffs characterize the money given to Defendants as an "investment" in an expansion to Cleveland, Texas, of Defendants' shed building business then located in Chino Valley, AZ. Plaintiffs allege that, "[p]lacing complete reliance and trust in defendant's word, expertise, the written guarantee that plaintiffs could withdraw their funds at any time[,] an agreement was signed and plaintiff did invest $25,000 for the specific purpose of the "new" expansion in Cleveland, TX." (Plaintiffs' Pretrial Order at p. 2.) No written agreement to this effect was produced at trial. On questioning by the Court, the Plaintiffs could not explain what exactly was meant by the term "investment." They stated that neither they nor the Defendants had really discussed what type of interest Plaintiffs would receive in the shed building business, for example, whether it would be a stock distribution or partnership interest. Apparently, no one discussed what amount or percentage of the business Plaintiffs' interest would constitute, whether Plaintiffs would receive any participation or future distributional

2

rights, termination rights, or any other  rights and obligations that one might expect would be part of an "investment."

Plaintiffs assert that, about four months later on November 4, 2002, they needed their money and made demand on Defendants for its return, only to learn that Defendants had spent the money and could not repay the debt.  A few months later, Plaintiffs and Defendants entered into a repayment agreement in which Defendants were to make to Plaintiffs $700 per month payments at 10% interest on the amount owed for one year, with the balance due July 10, 2003. (Plaintiffs' Exh. 3).  Plaintiffs assert that Defendants made 12 months of payments, plus one extra payment of $700.  When Defendants could not pay the balloon amount in February 2004, Plaintiffs apparently granted another extension, and Defendants made four additional monthly payments.  In June 2004, Defendants ceased making payments.  Plaintiffs assert they received a total amount of $11,900 from Defendants, whereas Defendants assert they made 18 total payments, or $12,600, to Plaintiffs.   The Court notes that Defendants attached to their Proposed Pre-Trial Order a handwritten document, not otherwise identified by exhibit letter or number, purporting to identify a list of checks by date and amount which represent the payments they made.  This document itemizes 17 checks, each for $700.  There was no effort made during the trial to sort out the discrepancy or to offer any accounting as to the sums due and owing.

In June 2004, as Defendants were in the process of loading their possessions to move to Texas, Plaintiffs had Defendants sign another agreement in which Defendants agreed to pay Plaintiffs the balance of the money owed, with Plaintiffs to provide Defendants a final balance amount within 60 days.  (Plaintiffs' Exh. 4)  Despite this agreement, Defendants made no further payments to Plaintiffs.  Plaintiffs obtained a judgment against Defendants from the Superior Court of the State of Arizona in April 2005, CV 2004 0925, for the sum of $19,726.93, interest thereon at 10% from August 19, 2004, and attorney's fees of $1023 and costs of $245, and post-judgment interest on said attorney's fees and costs from the date of the judgment at 10%.  On September 28, 2005, Plaintiffs filed this Arizona state court judgment in a state court in Coryell County, Texas.  Defendants filed their chapter 7 no asset case on October 14, 2005.  The deadline for filing complaints under § 523 for creditors of Defendants was February 6, 2006.  Plaintiffs' complaint against Defendants was filed timely on February 2, 2006.

Defendants contest all of Plaintiffs' allegations.  They contend they never made any false representations to Plaintiffs regarding the use of the money.  Defendants assert that the money was loaned to help them establish their storage shed building business in Texas, which was a location where Defendants could save money on freight and delivery of their raw materials.  They assert they were not trying to make a "hasty departure" from Arizona, as Plaintiffs allege, but instead, all parties knew their intention to move to Texas.  Additionally, Defendants state that they had every intention of paying the debt, and, in fact, they did pay approximately one-half the amount owed.

### Findings of Fact

1.      It is undisputed that on or about June 12, 2002 a check in the amount of $25,000 was delivered to Al Cleveland and was drawn on the account of Carl and Marilyn Mauldin.

2.      This check was not admitted into evidence.

3.      The parties had no writing to evidence the "purpose" of the check or the "consideration" to be received by the Mauldins, although there was no assertion that the Mauldins owed any monetary obligation to the Clevelands.

4.      Plaintiffs contend that the purpose of the check was to enter into an "investment" position with Defendants.  The testimony indicated that, notwithstanding this assertion, there never was any written document to detail any terms or conditions of any such "agreement".

5.      The testimony of Plaintiffs also indicated that they never discussed with the Defendants, or either of them, whether their investment would be represented by stock or a partnership position in the shed building business and what percentage of the "business" such investment would constitute.  There were no discussions of participatory rights or obligations, terms of default, or any other discussions of the scope of such "investment."

6.      Defendants asserted that the $25,000 represented a "loan."  However, there was no writing to evidence any of the terms of such loan, such as an interest rate, terms of repayment, or terms of default.  The only term that the two sides agreed to was that Plaintiffs had the right to request the return of the $25,000.

7.      The Plaintiffs did request the return of the funds on or about November 4, 2004. (Plaintiffs' Exh.1).  The demand requested "interest" although the testimony indicated that there

4

was no agreement that the "investment" would incur an interest obligation.

8.     When Defendants were unable to return the $25,000, the parties entered into a written agreement authorizing monthly installments of $700, commencing on February 10, 2003 and with a balloon payment to be paid by July 10, 2003. (Plaintiffs' Exh.3).

9.     The repayment term was later extended with a final installment to be due within 60 days of June 18, 2004. This document estimated the sum to be due as $23,000.

10.    The "sum due" was clarified to be $19,726.93 by separate statement of August 2, 2004. (Plaintiffs' Exh. 5).

11.    Plaintiffs apparently recovered a state court judgment against the Defendants in Arizona. A copy of the judgment was not entered into the record, but what purports to be a copy of the judgment was attached to the Plaintiff's Original Complaint and its accuracy was not disputed by the Defendants.  It reflects a judgment in the amount of $19,726.93 with interest on same at 10% per annum from and after August 19, 2004; attorney's fees of $1023, court costs of $245, and interest on the attorney's fees and court costs at 10% per annum from and after the date of the judgment which was signed April 27, 2005 and filed of record on April 29, 2005.

12.    The Arizona State Court Judgment apparently was attempted to be "registered" in Coryell County, Texas on or about September 28, 2005.  No documentation of such effort was introduced into evidence before this Court.  However, a copy of a Petition for Suit on Foreign Judgment was attached to Plaintiff's Addendum filed in this suit on February 28, 2006.  No copy of any order or judgment approving such petition was offered at trial.

13.    Notwithstanding the detailed factual recitations contained in Plaintiffs' various pleadings filed in this suit, including the Complaint, Addendum to the Complaint, and their proposed Pre-trial Order, no questions were asked of either Defendant, or any other witness, which would disclose any details of the following:

a.  specific representations allegedly made by Defendants, or either of them, prior to the Defendants' receipt of the $25,000;

b.  specific facts to show that such representations allegedly made by Defendants were false;

c.  specific facts to show that Defendants, or either of them, were aware that such

representations were false;

d.  specific facts to show that Defendants, or either of them, made any of such representations with the intent that Plaintiffs, or either of them, would rely on such false representations; and

e.  specific facts to show that Plaintiffs did "justifiably rely" on such false representations.

## Conclusions of Law

1.  <u>Pro-Se Status of the Parties</u>

Because both Plaintiffs and Defendants are proceeding pro se, or on their own behalf without the assistance of an attorney, the pleadings they have filed in this lawsuit must be construed as liberally as possible.  See <u>Haines v. Kerner</u>, 404 U.S. 519, 92 S. Ct. 594 (1972). Thus, the literal text of Plaintiffs' pleadings must be read and interpreted in such a manner that all plausible causes of action are derived.  However, a plaintiff's *pro se* status does not offer "an impenetrable shield, for one acting pro se has no license to harass others, clog the judicial machinery with meritless litigation, or abuse already overloaded court dockets." <u>Farguson v. Mbank Houston, N.A.</u>, 808 F.2d 358, 359 (5th Cir. 1986).  Although no specific subsection of 11 U.S.C. § 523 is stated by Plaintiffs as grounds for their complaint, their assertions of false representations and statements by Defendants to induce them to "invest" in Defendants' business or to make Defendants a loan for the shed business places this suit within the parameters of § 523(a)(2)(A).

2.  <u>Burden of Proof in a 11 U.S.C. § 523(a)(2)(A) Lawsuit</u>

Here, Plaintiffs are asking that the debt Defendants were ordered to pay them by the Arizona court judgment should survive Defendants' bankruptcy, in other words, that this debt should be "excepted" from the general discharge of debt granted to Defendants such that Defendants remain liable for paying the debt.  In a lawsuit, generally the plaintiff has the burden of providing sufficient evidence to the court that the plaintiff should prevail.  Courts have determined that the party seeking an exception to discharge bears burden of proof as to nondischargeability of the debt.  <u>Fields v. Hartford Casualty Insurance Co.</u>, 926 F.2d 501 (5th Cir.), <u>cert. denied</u>, 502 U.S. 938 (1991).  Here, Plaintiffs bear the burden of proof to present evidence showing the debt Defendants owe them should survive bankruptcy.  Also, the United

6

States Supreme Court has stated that a plaintiff must prove the exception to discharge by a preponderance of the evidence.  Grogan v. Garner, 498 U.S. 279, 287 (1991); see also, In re Mercer, 246 F.3d 391, 403 (5th Cir.2001) ("A creditor must prove its claim of nondischargeability by a preponderance of the evidence.); In re Acosta, 406 F.3d 367, 372 (5th Cir. 2005) (same, citing Mercer).  Thus, Plaintiffs must present an amount of evidence to the Court that outweighs the opponent's evidence, in other words, such evidence that shows it is more probable than not that the factors required for a § 523 claim are met.

3.      Factors required for a 11 U.S.C. § 523(a)(2)(A) Lawsuit

Under 11 U.S.C. § 523(a)(2), a debt shall not be dischargeable in bankruptcy "to the extent" it is "for money ... obtained by ... false pretenses, a false representation, or actual fraud."  Archer v. Warner, 538 U.S. 314, 316, 123 S. Ct. 1462, 1465 (2003).  Thus, for a debt to be non-dischargeable under § 523(a)(2)(A), a plaintiff must show: (1) that the defendant made a representation; (2) it was knowingly false; (3) it was made with the intent to deceive the plaintiff; (4) the plaintiff actually and justifiably relied on it; and (5) the plaintiff sustained a loss as a proximate result of its reliance.  Id.; In re Mercer, 246 F.3d 391, 403 (5th Cir. 2001).  Thus, even if Plaintiffs can show the Defendants had the requisite intent in order to establish false pretenses and representations or actual fraud, Plaintiffs must also present proof they relied on the false statements.  See Fields v. Mans, 516 U.S. 59 (1995) (plaintiff must show justifiable reliance which is based upon "the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case").

As stated above, it is clear that Defendants received $25,000 from Plaintiffs to use in some way to further Defendants' shed building business.  Plaintiffs seek to have this debt excepted from Defendants's discharge.  However, to accomplish this goal, Plaintiffs were charged with presenting evidence showing, more likely than not, that Defendants made false representations to Plaintiffs before Plaintiffs gave Defendants the $25,000 check, that Defendants knew their statements to Plaintiffs were false when made, that they made these statements with the intent that Plaintiffs would rely on the false representations and give them the money, that Plaintiffs did "justifiably rely" on such false representations and were harmed.  There is no question that Plaintiffs were harmed because they have not been paid back all of the $25,000, but

7

they failed to prove the other required elements, all of which must be substantiated to have their debt held nondischargeable.

In sum, the Court finds that Plaintiffs have failed to meet their burden of proof to show Defendants received money . . . by reason of false pretenses, a false representation or actual fraud . . . to prevail on their § 523(a)(2) claim. They did not meet their burden of providing sufficient evidence to the bankruptcy court to cause the debt Defendants still owe them to be excepted from Defendants' discharge. All requested relief is denied.

A judgment consistent with this Memorandum Opinion will be entered of even date herewith.

IT IS SO ORDERED.